# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cr-423 |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL J. LUTERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Pending before the Court is Defendant's MOTION TO SUPPRESS (Document No. 45). The government has filed a response (Document No. 46). On September 17, 2008, the Court conducted an evidentiary hearing and heard oral argument from counsel. The motion is ripe for disposition.

Factual Background

Defendant Daniel Luterman is charged in a 5-count indictment with possession with intent to distribute cocaine, oxycontin and ecstasy, possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime. The charges stem from a search of Defendant's home on the night of September 28, 2007. Defendant contends that the search violated his rights under the Fourth Amendment of the United States Constitution because the search warrant was not supported by probable cause.

Law enforcement officers Conor Mullen and James Hensell testified at the suppression hearing that they conducted a lengthy face-to-face interview with a confidential informant ("CI") in the late afternoon of Friday, September 28, 2007. The CI told the officers that earlier that day

a package containing a kilogram of cocaine was delivered to a home located at 424 Glencoe Drive, West Mifflin, Pennsylvania by the United States Postal Service while the CI was present. The CI also stated that large amounts of cocaine and marijuana were visible in the home, and that 2-3 ounces of cocaine and a pound of marijuana were located on a table in the living room. The CI stated that the home was owned by Defendant Luterman and explained that Luterman goes to Los Angeles, California, where he purchases kilos of cocaine and sends it back to his home via the US Mail. The CI explained that Luterman sells cocaine heavily on the weekend and the CI believed that the cocaine would be sold between Friday afternoon and Saturday morning. The CI also informed the officers that Luterman was not in town at the time and was either in California or en route back home.

The interview occurred late Friday afternoon, September 28, 2007. Following the interview, Officer Mullen confirmed through Allegheny County assessment records that the property at 424 Glencoe Drive was owned by Defendant Luterman. He also ran a Pennsylvania State Police JNET report to ascertain Luterman's criminal history, and then prepared an affidavit of probable cause. The officers then drove to the home of the Honorable David Cashman, a Criminal Division judge on the Court of Common Pleas of Allegheny County, who authorized and issued a night-time search warrant at 10:25 p.m. The officers proceeded to West Mifflin and executed the search warrant immediately.

Legal Analysis

Defendant makes several arguments: (1) that the affidavit of probable cause did not establish the credibility of the informant; (2) that the affidavit falsely stated that Daniel Luterman

had "multiple arrests and convictions for violations of the controlled substance act" when, in actuality, he contends that he had only one such arrest and conviction; (3) that the officers knew that Luterman was out of town on September 28, 2007, and therefore could not sell the drugs that Friday evening and Saturday morning; and (4) that the officers undertook inadequate efforts to corroborate the information learned from the informant. Defendant also presented testimony from Cara Luterman, Defendant's wife, to the effect that she and her children were home all day September 28, 2007 and that no other person was present in the house at any time. The Court will address Defendant's arguments seriatim.

As an initial matter, the search at issue commenced pursuant to a warrant issued by a judicial officer. Because of the historic preference for the warrant process, a district court conducts a deferential review of the initial probable cause determination, examining whether the issuing judge had a "substantial basis" for concluding that there was probable cause for the issuance of a warrant. *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005). In considering the sufficiency of an affidavit, a court looks at the "totality of the circumstances" to make a practical, common-sense decision whether the circumstances set forth, including the veracity and basis of knowledge of persons supplying information, establish a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 262-63. In *Ritter*, the United States Court of Appeals for the Third Circuit explained that "a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *Id.* at 263 (citation omitted).

1. Credibility of Informant

As both parties recognize, this is not a case involving an anonymous informant. Although the government has not disclosed the informant's identity during this proceeding due to concerns for his/her safety, the CI was specifically named in the affidavit which was presented to Judge Cashman. A face-to-face tip from an identified informant is entitled to greater weight than that from an anonymous informant because officers have a first-hand opportunity to assess the informant's credibility and demeanor, and such persons may be exposing themselves to prosecution for lodging false complaints and/or being in the presence/possession of contraband. *United States v. Valentine*, 232 F.3d 350, 354-55 (3d Cir. 2000) (and cases cited therein). An informant's credibility is not a separate, dispositive inquiry but must be evaluated as part of the totality of circumstances. *Ritter*, 416 F.3d at 272 (Smith, J., dissenting) (citations omitted).

The Court finds that there was a substantial basis to conclude that the CI was credible in light of the totality of the circumstances. The CI, whose name was known by the issuing Judge, claimed to have been personally present at 424 Glencoe Drive, West Mifflin, PA that very day when a postal package was delivered which contained a kilo of powdered cocaine. The CI further stated that, based on personal observation, there were additional quantities of cocaine and marijuana on a table in the living room. These were specific, detailed and timely averments. The CI also provided additional details regarding Defendant's drug purchasing and selling activities. The possibility that the CI was lying was diminished by the fact that the CI's admission to being in the presence of illegal drugs may have constituted a probation violation for which he/she could be cited. Officers Mullen and Hensell conducted a one-two hour face-to-face interview of the CI prior to preparing the affidavit, during which time the officers had ample time

to assess the CI's demeanor/credibility. None of the details that the officers attempted to corroborate were inaccurate. In sum, the alleged lack of credibility of the CI does not justify suppression of the evidence.

        2.        Alleged False Statement Regarding Luterman's Criminal History

The affidavit stated that after interviewing the CI, Officer Mullen attempted to corroborate the information by running a criminal background check on Daniel Luterman. The affidavit reflected that Mullen "found that Daniel Luterman has multiple arrests and convictions for violations of the controlled substance act." Detective Mullen testified that he based this statement on his review of a Pennsylvania State Police JNET criminal history report. That report listed a number of offenses and convictions unrelated to controlled substances and disclosed that Luterman had been on probation on multiple occasions. The specific dispute raised by Defendant stems from page 2 of the JNET report, which reflects three drug charges dated July 5, 2000 and one drug charge dated June 21, 2000. Officer Mullen interpreted these entries to reflect multiple arrests and convictions. Defense counsel went to great lengths to demonstrate, based on state court procedures with which the officers must have been familiar, that because all the offense dates were listed under the same "OTN,"[1] Luterman had only one prior arrest and conviction under the controlled substance act. Defendant argues that this error constitutes an attempt to provide false and misleading information to the issuing judge and negates the affiant's good faith.

---

[1] The acronym stands for Offense Tracking Number standardly utilized in the state court system.

The Court cannot agree with Defendant, based on the evidence presented at the hearing and from its own examination of the JNET report. The Supreme Court has established that affidavits need not be entirely "accurate," although they must be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true. *See Franks v. Delaware*, 438 U.S. 154, 165 (1978); *Illinois v. Gates*, 462 U.S. 213, 235 (1983). The relevant first column on the JNET report is entitled "Offense Date." There are three controlled substance offenses dated July 5 and a fourth controlled substance offense dated June 21, 2000. The report reflects Luterman having pled guilty to all four charges, and having received a disposition of "restitution" for the three offenses dated July 5 and having been sentenced to "County prison/01 yrs 11 mos." for the offense dated June 21, 2000. Even though the report listed all four offenses under a single "OTN" number, the Court finds that Officer Mullen's testimony that he believed that there were multiple offenses which had been consolidated under one number for prosecution is credible. At most, it was an understandable mistake based on the contents of the JNET report. The Court rejects Defendant's contention that Officer Mullen intentionally or recklessly provided false information in an attempt to mislead the issuing judge, and therefore, will not strike the averment regarding Luterman's criminal history from the affidavit.[2] The Court further concludes that even assuming arguendo that the affidavit was not entirely accurate or sufficient, the officers reasonably relied in good faith on Judge Cashman's authorization and issuance of the search warrant. *Ritter*, 416 F.3d at 264 (citing *United States v. Leon*, 468 U.S. 897 (1984)).

---

[2]The Court observes that in weighing the totality of the circumstances, there is little marginal benefit from an averment that a defendant has "multiple" prior drug convictions as opposed to having been convicted of a prior drug offense on only one occasion. In either event, the CI's observation of drugs in the home and the CI's prediction of impending drug sales would have been corroborated by the Defendant's criminal history.

3.  Luterman's Physical Location

It is undisputed that Defendant was not at his home on September 28, 2007 when the CI was present or when the search warrant was executed. The testimony of Detective Hensell established that the CI had informed the officers that Luterman was either in California or on his way home. Defendant argues that the officers should have known that the CI's information was not worthy of credence as there was no basis to believe the CI's statement that the drugs would be sold between Friday afternoon and Saturday morning. As an initial matter, the validity of the warrant did not depend upon Luterman's presence in the home. It was a search warrant for contraband, not an arrest warrant for a person. All that was required was probable cause to believe that illegal drugs would be found in the home. The affidavit does not aver that Luterman would be present, or that Luterman was the only person who may sell the drugs. Rather, the affidavit avers two related statements: (1) that Luterman "sells cocaine heavily on the weekend"; and (2) that the CI "believed that the remaining cocaine will be sold between Friday afternoon and Saturday morning." The first averment is a general statement of Defendant's past practices, similar to the description of his trips to Los Angeles and his use of the US Postal Service. The second averment is specific as to timing – it creates some exigency that the drugs observed by the CI in the home on Friday may be gone by the next day[3] – but does not predict that Defendant Luterman will be personally present and selling the drugs. Thus, the officers were justified in believing both statements. Indeed, to the extent that Luterman was the primary seller, his

---

[3] The Court notes that the affidavit was prepared after a late afternoon interview on Friday, issued by Judge Cashman at 10:25 p.m. on Friday night after the officers drove to his home, and thereafter executed immediately. Because the Court concludes that Judge Cashman had a substantial basis to issue the warrant, the Court need not reach the "exigent circumstances" exception.

7

absence made it *more* probable that the illegal drugs would still be found at the home. In sum, the fact that Luterman was not home at the time of the CI's visit or when the warrant was executed does not invalidate the warrant and does not provide a basis for suppression of the evidence.

4. Efforts at Corroboration

Defendant contends that the officers did not properly corroborate the information provided by the CI. The record establishes the following efforts to confirm details that could be obtained without a warrant: (1) officer Mullen perfomed a property search of the Allegheny County assessment records and confirmed that 424 Glencoe Drive was owned by Defendant, as stated by the CI; (2) officer Mullen secured a Pennsylvania State Police JNET report and learned that Defendant had at least one prior conviction for a controlled substance offense for which he was sentenced to 23 months' imprisonment; (3) the officers personally interviewed the CI extensively, during which time they evaluated his/her demeanor and became aware that the statements were against the CI's own interest; and (4) the officers conducted some limited surveillance of the home, which appeared to be occupied although there was no observation of actual drug sales activity.[4] Given the totality of the circumstances, the officers acted reasonably in attempting to verify the details that could be confirmed in a relatively limited timeframe.

In summary, the Court finds that the issuing judge had a substantial basis to conclude that there was a fair probability that evidence of a crime would be found at 424 Glencoe Drive, West

---

[4]When the officers executed the warrant, they discovered that all the lights and the TV in the home had been left on, although nobody was present at the time.

Mifflin, Pennsylvania on September 28, 2007. Accordingly, the search warrant will be upheld. The Court further finds, in the alternative, that even assuming arguendo that the affidavit was inadequate to establish probable cause, the officers reasonably relied in good faith on Judge Cashman's authorization and issuance of the search warrant.

In accordance with the foregoing, Defendant's MOTION TO SUPPRESS (Document No. 45) is **DENIED.**

SO ORDERED this 23rd day of September, 2008.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Almon S. Burke, Jr., AUSA
 Email: almon.burke@usdoj.gov

 Charles J. Porter, Jr., Esquire
 Email: Cjporterjr@aol.com